**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**



FILED

OCT 17 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

PFIZER INC. and PFIZER LTD.,

        Plaintiffs and
        Counterclaim Defendants,

v.                                    Civil No. 2:10cv128

TEVA PHARMACEUTICALS USA, INC.,

        Defendant and
        Counterclaim Plaintiff.

### MEMORANDUM OPINION

This matter comes before the court on the plaintiffs', Pfizer Inc. and Pfizer Limited (collectively "Pfizer"), Motion for Attorney Fees Pursuant to 35 U.S.C. § 285 ("Motion").  On August 12, 2011, this court entered its Opinion and Final Order ("Opinion"), which, in pertinent part, denied the defendant's, Teva Pharmaceuticals USA, Inc. ("Teva"), Motion for Leave to File its Proposed Second Amended Answer and Counterclaim, and found that Pfizer did not commit inequitable conduct in the prosecution of United States Patent No. 6,469,012 ("the '012 patent").  See Pfizer, Inc. v. Teva Pharms. USA, Inc., No. 2:10cv128, 2011 U.S. Dist. LEXIS 90021, at *70-*71 (E.D. Va. Aug. 12, 2011).  Pfizer now moves this court to award "attorney fees relating to Teva's inequitable conduct defense from the date of the Federal Circuit's decision in Therasense, Inc. v. Becton,

Dickinson and Co., 2011 WL 2028255 (Fed. Cir. May 25, 2011)."   Pls.'
Mot. for Attorney Fees 1, Docket # 476.   Teva in turn asks the court
to deny Pfizer's Motion or, in the alternative, to reduce the award
sought by Pfizer to exclude attorney fees related to discovery
authorized by the court.   Def.'s Opp'n to Pls.' Mot. 2, Docket # 481.
For the reasons stated herein, the court **GRANTS** Pfizer's Motion for
Attorney Fees.

## I.   Procedural History

On March 24, 2010, Pfizer[1] filed suit in this court against Teva[2]
alleging imminent infringement of Pfizer's United States Patent No.
6,469,012 ("the '012 patent"), entitled "Pyrazolopyrimidinones for
the Treatment of Impotence."   United States Patent No. 6,469,012
(filed May 13, 1994) (issued Oct. 22, 2002).   The '012 patent claims
the use of certain chemical compounds as a method of treating erectile
dysfunction.   On November 12, 2010, Teva filed its first Motion for
Leave to File an Amended Answer and Counterclaim ("First Motion to

---

[1] Upon Motion by Pfizer, and over Teva's objection, this court added
Pfizer Ireland Pharmaceuticals Unlimited Liability Co. as a
plaintiff on June 30, 2011, see Docket # 406, and Pfizer filed an
Amended Complaint on the same day.   See Docket # 407.   The court,
by agreement of the parties, dismissed Pfizer Ireland
Pharmaceuticals Partnership from this suit on July 14, 2011.   See
Docket # 434.

[2] Pfizer initially brought suit against two defendants:   Teva
Pharmaceutical Industries, Ltd., and Teva Pharmaceuticals USA, Inc.
The complaint against Teva Pharmaceutical Industries, Ltd. was
dismissed without prejudice upon agreement of the parties on
May 4, 2010.   See Docket # 26.

Amend"). See Docket # 55. In particular, Teva sought to amend its Answer and Counterclaim to add the allegation that the '012 patent was invalid because Pfizer engaged in inequitable conduct during the patent's prosecution and reexamination. The court issued a Memorandum Order allowing the amendment on January 18, 2011. See Pfizer, Inc. v. Teva Pharms. USA, Inc., No. 2:10cv128, 2011 U.S. Dist. LEXIS 90762 (E.D. Va. Jan. 18, 2011). Specifically, the court found that, "[t]hough it [was] a close question, . . . Teva ha[d] met the [pleading] requirements of [Federal] Rule [of Civil Procedure] 9(b)." Id. at *11. Thus, the court directed Teva to file its Amended Answer and Counterclaim.

On June 17, 2011, Teva again moved to amend its Answer and Counterclaim, seeking to change its allegations regarding the inequitable conduct claim. Teva first alleged that "Pfizer in-house attorneys Watson McMunn and Dr. Peter Richardson, and Pfizer's outside counsel Daniel DiNapoli of the Kaye Scholer law firm, engaged in inequitable conduct during the prosecution of the application for the '012 patent," by failing to disclose that a Pfizer competitor, Bayer Aktiengesellschaft and Bayer, Inc., filed a claim in Canada ("the Bayer Statement of Claim"). Mem. of Law in Supp. of Mot. for Leave to File Proposed Second Am. Ans. & Countercl., Ex. A, Proposed Second Am. Countercl. ¶ 15, Docket # 347. The Bayer Statement of Claim argued that the claims of the Canadian patent directed to the

3

treatment of non-human animals were invalid for overbreadth.  Id.
According to Teva, Mr. McMunn, Dr. Richardson, and Mr. DiNapoli knew
about this allegedly material information and should have disclosed
the Bayer Claim to the PTO, but instead they intentionally withheld
the information so that the '012 patent would issue as soon as
possible.  Id. at ¶¶ 17-18.

Teva also alleged that Mr. O'Rourke, who was named in the First
Amended Answer and Counterclaim, and Rudolph Hutz, both partners at
the time at the law firm of Connolly Bove Lodge & Hutz ("Connolly
Bove"), [3] learned that the patent examiner was going to allow the
claims of the '012 patent, and therefore no longer submitted any
disclosures to the PTO.  Id. at ¶ 19.  Teva stated that this was
inequitable conduct because Mr. O'Rourke instituted a system of
"willful blindness," the object of which was to avoid awareness of
any information that would normally be disclosed to the PTO to prevent
delaying the issuance of the '012 patent.  Id. at ¶ 20.

The court denied Teva's Motion for Leave to File its Proposed
Second Amended Answer and Counterclaim on the grounds of both
prejudice and futility.[4]  Pfizer, Inc. v. Teva Pharms. USA, Inc.,

---

[3] Connolly Bove was hired by Pfizer during the prosecution of the '012
patent to submit documents to the PTO pursuant to the duty of
disclosure.

[4] For a full discussion of Teva's motion, and the court's holding,
see Pfizer, Inc. v. Teva Pharms. USA, Inc., 2011 U.S. Dist. LEXIS

2011 U.S. Dist. LEXIS 90021, at *70-*71.   The court held that amendment at such a late juncture, indeed three days into the trial, "would severely prejudice both Pfizer and the individuals named in the Proposed Second Amended Answer and Counterclaim." Id. at *66. Additionally, the court stated Teva "failed to make a plausible showing that [Mr. McMunn and Mr. DiNapoli] had any duty of disclosure to the PTO such that they could have had any intent to deceive the PTO," while also failing "to make any plausible showing of but-for materiality of the information not disclosed to the PTO." Id. at *67-*68.   This ruling left only the inequitable conduct claim against Mr. O'Rourke alleged in the First Amended Answer and Counterclaim to proceed on the merits at trial.

This court issued its Opinion on August 12, 2011, finding that Pfizer did not commit inequitable conduct in the prosecution of the '012 patent.   See id. at *139. The court summarized Teva's contentions as follows:

> Teva argue[d] that Mr. O'Rourke's failure to turn over the Bayer Statement of Claim constituted inequitable conduct because the reference proved the invalidity of the animal claims in the patent, and it was withheld with the specific intent to deceive the PTO and to speed the issuance of the '012 patent. Further, Teva maintain[ed] that this is a case of affirmative egregious misconduct because Mr. O'Rourke was engaged in a scheme of willful blindness to prevent his discovery of material information that would need to be turned over to the PTO.

---

90021, at *44-*71.

5

Id. at *131-*32.   However, the court found "there is utterly no evidence as to either of these elements," id. at *132, citing the Federal Circuit's recent opinion in Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 2011 W.L. 2028255 (Fed. Cir. May 25, 2011) (en banc).[5]

On August 30, 2011, Pfizer filed this Motion under 35 U.S.C. § 285, requesting that the court award attorney fees relating to Teva's inequitable conduct defense.   Teva filed its Opposition to Pfizer's Motion on September 15, 2011, arguing that the court should deny Pfizer's request, either on the merits or because the ruling is premature in light of Teva's pending appeal of the underlying decision.   Def.'s Opp'n to Pls.' Mot. 2, Docket # 481.   Teva also argued that if the court did award attorney fees, it should reduce the fee award sought by Pfizer to exclude attorney fees related to discovery authorized by the court.   Id.   Pfizer filed its Reply Memorandum in Further Support of its Motion on September 22, 2011. The Motion is now ripe for decision.

## II.  Timing of Consideration of Motion

First, Teva argues that Pfizer's Motion should be denied as premature.   Teva filed its Notice of Appeal of the court's decision on September 9, 2011.   Teva is correct in its assertion that if the Federal Circuit finds the '012 patent invalid or unenforceable, Teva

---

[5] See discussion infra Section III.B.

would be the prevailing party in the suit; therefore, Pfizer would not be entitled to attorney fees under 35 U.S.C. § 285, even if the inequitable conduct ruling is upheld.   See Gentry Gallery v. Berkline Corp., 134 F.3d 1473 (Fed. Cir. 1998).   However, the court is not persuaded that it should delay ruling on Pfizer's Motion.

After an appeal is taken, the court has the option to rule on a claim for fees, defer the ruling, or dismiss the motion without prejudice until after the appeal is resolved.   See Fed. R. Civ. P. 54(d) Advisory Committee Notes (1993 Amendments).   The Advisory Committee Notes also state:

> In many nonjury cases the court will want to consider attorneys' fees issues immediately after rendering its judgment on the merits of the case. . . . Prompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind. It also enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case.

Id.   The court finds this reasoning persuasive, and will not delay in ruling on the Motion.

### III. "Exceptional" Case Pursuant to 35 U.S.C. § 285

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

> A determination whether to award attorney fees under § 285 involves a two-step process. First, a district court must determine whether the prevailing party has proved by clear and convincing evidence that the case is exceptional. .

7

. . Second, if the district court finds the case to be exceptional, the court must then determine whether an award of attorney fees is appropriate and, if fees are appropriate, the amount of the award.

Eon-Net LP v. Flagstar Bancorp, 2011 U.S. App. LEXIS 15650, at *19-*20 (Fed. Cir. July 29, 2011). A district court may find that a case is exceptional "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005).

"[Absent misconduct during litigation,] sanctions may be imposed . . . only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 543-44 (Fed. Cir. 2011) (quoting Brooks Furniture, 393 F.3d at 1381). "Under this exacting standard, the [accused party's] case must have no objective foundation, and the [accused party] must actually know this." iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1377 (Fed. Cir. 2011). Correspondingly, "[a] frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless." Haynes Int'l Inc. v. Jessop Steel Co., 8 F.3d 1573,

1579 (Fed. Cir. 1993); see also Old Reliable Wholesale, 635 F.3d at 544 (finding that for a claim to be objectively baseless, it must be "so unreasonable that no reasonable litigant could believe it would succeed" (quoting iLOR, 631 F.3d at 1377)).   "Hard-fought litigation," without more, will not result in a level of misconduct permitting an award of fees.   See Humanscale Corp. v. Compx Intern, Inc., No. 3:09cv86, 2010 U.S. Dist. LEXIS 83876, at *22 (E.D. Va. Aug. 16, 2010).

## A.

Pfizer argues that Teva's conduct in pursuing its inequitable conduct counterclaim after the Federal Circuit's decision in Therasense makes this case exceptional, because Teva knew its claim was unjustified and "objectively baseless," such that "no reasonable litigant could believe it would succeed."   Pls.' Mem. in Supp. of Mot. 17, Docket # 479.   To assess Pfizer's characterization of Teva's claim, the court first must again review the requirements for a valid inequitable conduct claim laid out in Therasense,[6] in which "[t]he Federal Circuit significantly narrowed the number of instances in which a court may find inequitable conduct."   Pfizer, Inc. v. Teva Pharms. USA, Inc., 2011 U.S. Dist. LEXIS 90021, at *124.   At a base

---

[6] The history of the inequitable conduct defense in patent cases, as well as the factual background and reasoning behind the Therasense opinion, are covered in depth in the court's Opinion.   See Pfizer, Inc. v. Teva Pharms. USA, Inc., 2011 U.S. Dist. LEXIS 90021, at *124-*31.

level, "[i]nequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." Therasense, 2011 W.L. 2028255, at *4.

In Therasense, the Federal Circuit tightened the standards for demonstrating the two requisite elements of inequitable conduct, the materiality of the patentee's conduct and its intent to deceive the United States Patent and Trademark Office ("PTO"). Id. at *9. Both of these elements must be proven separately by clear and convincing evidence. Id. at *10-*11. In addressing materiality, the court held that "the materiality required to establish inequitable conduct is but-for materiality." Id. at *11 (emphasis added). Therefore, the court must assess "whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." Id. The Federal Circuit did carve out an exception to "but-for" materiality, for "affirmative acts of egregious misconduct" by the patentee, which originates from the "unclean hands" doctrine. Id. at *12. If a court finds such behavior, for example the willful filing of a false affidavit, materiality is assumed. Id. "[M]ere nondisclosure of prior art references to the PTO [or] failure to mention prior art references in an affidavit," however, does not constitute affirmative egregious misconduct. Id. Claims "based on such omissions require proof of but-for materiality." Id.

10

As for the intent element, the Federal Circuit held that courts may infer intent from direct and circumstantial evidence, but that such intent must be "the single most reasonable inference able to be drawn from the evidence." Id. at *10 (emphasis added) (citation and internal quotation marks omitted). This prong will not be satisfied if "multiple reasonable inferences may be drawn" from the evidence presented. Id.

**B.**

Turning now to the evidence presented at trial, Teva's inequitable conduct claim was objectively baseless after the Federal Circuit's ruling in Therasense, and Teva could not have reasonably believed that its claim would succeed. As this court previously found when looking at Teva's arguments for materiality and intent, and recounts below, "there is utterly no evidence as to either of these elements."[7] Pfizer, Inc. v. Teva Pharms. USA, Inc., 2011 U.S. Dist. LEXIS 90021, at *132. In other words, Teva must have known that its inequitable conduct claim, far from being even remotely

---

[7] It is worth noting at the outset of this discussion that the court does not consider Teva's frequent quotations from the June 3, 2011, hearing on Teva's motion for sanctions and a continuance in front of Magistrate Judge Stillman relevant to this determination. Judge Stillman, as he himself indicated, was focused on discovery rulings, and "not ruling on any sort of inequitable conduct motion." Tr. of Proceedings, 6/3/11 Hr'g on Mots. 34:21-24, Docket # 322. Judge Stillman also expressly did not take into account Therasense in his considerations. See id. at 9:4-5.

11

supported by clear and convincing evidence, was objectively baseless.

### 1.

Teva's initial pleading alleged materiality based on Mr. O'Rourke[8] failure to disclose the Bayer Statement of Claim. See Def.'s Revised First Amended Countercl. ¶¶ 44-46, Docket # 80. As the court found, and Teva does not contest,[9] by itself, "the Bayer Statement of Claim hardly approaches the but-for materiality required by Therasense." [10] Pfizer, Inc. v. Teva Pharms. USA, Inc., 2011 U.S. Dist. LEXIS 90021, at *132.

Teva argues, however, that its allegation at trial of "willful blindness" on the part of Mr. O'Rourke constitutes affirmative

---

[8] The Counterclaim also named Dr. Ellis and Messrs. Benson and Jones, who were later dropped from the litigation by Teva at the beginning of trial.

[9] Teva states that Pfizer's argument that the Bayer Statement of Claim cannot support an inequitable conduct claim "misstates Teva's trial contention." Def.'s Opp'n to Pls.' Mot. 14, Docket # 481. Teva argues that its contention at trial was instead that the alleged "willful blindness" scheme of Mr. O'Rourke alleviated the need for any but-for materiality showing. Id. at 14-15. Similarly, Teva points to this scheme, and not the Bayer Statement of Claim, as providing the basis of its assertion of Mr. O'Rourke's intent. Id. at 16.

[10] Because Teva no longer contends, and the court agrees, that the Bayer Statement of Claim could or did provide an objective basis for demonstrating materiality for an inequitable conduct claim, the court does not need to spend significant time supplementing its previous discussion of the matter. See Pfizer, Inc. v. Teva Pharms. USA, Inc., 2011 U.S. Dist. LEXIS 90021, at *132-*34; supra note 9.

egregious misconduct under Therasense, bypassing the need to show "but-for" materiality.   Def.'s Opp'n to Pls.' Mot. 14-15, Docket # 481.   Teva notes that Therasense, in discussing affirmative egregious misconduct, stated that the doctrine is "flexible enough to capture varying manifestations of egregious and abusive conduct." Id. at 17.   This court's finding that Mr. O'Rourke did not commit inequitable conduct, the argument posits, "does not render Teva's contention objectively baseless."   Id.

The court does not agree that the flexibility of the concept of affirmative egregious misconduct, as discussed in Therasense, provides any underlying support to Teva's contention here.   The court need not decide the theoretical question as to whether a "deliberately planned and carefully executed scheme to defraud the PTO," to quote from Therasense, could be hypothesized in which the methods utilized could provide a basis for an inequitable conduct claim while also being properly termed "willful blindness."   Teva's repeated invocation of the label "willful blindness" itself provides no objective basis for a finding of materiality – the inquiry must focus on the actual underlying factual circumstances of this case. And when examining those facts, rather than Teva's "smokescreen," it is clear that no evidence exists that would allow any reasonable

13

litigant, including Teva, to think that Mr. O'Rourke engaged in affirmative egregious misconduct.[11]

Most importantly, the Federal Circuit distinguished in Therasense that "neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct, claims of inequitable conduct that are based on such omissions require proof of but-for materiality."   Therasense, 2011 W.L. 2028255, at *12.   Mr. O'Rourke's actions here are most akin to acts of nondisclosure, and Teva has made absolutely no showing of "but-for" materiality.   While Teva attempts to recharacterize Mr. O'Rourke's inaction with foreign litigation material as a scheme of affirmative action, the court does not find such an interpretation reasonable, especially in light of the record in this case.   The evidence, far from showing Mr. O'Rourke schemed to deceive the PTO, shows that his system was a reaction, albeit a sloppy one,[12] to a general directive from the PTO itself. See Pfizer, Inc. v. Teva Pharms. USA, Inc., 2011 U.S. Dist. LEXIS 90021, at *133.

In contrast, the Federal Circuit cited "the filing of an unmistakenly false affidavit," or past cases under the "unclean

---

[11] See infra note 12 and accompanying text.

[12] See Pfizer, Inc. v. Teva Pharms. USA, Inc., 2011 U.S. Dist. LEXIS 90021, at *137-*38, n.106.

hands" doctrine involving perjury, manufacture and suppression of evidence, and bribery, as examples of affirmative misconduct. Therasense, 2011 W.L. 2028255, at *13.   Further, as the Federal Circuit noted in justifying the exception to materiality, "a patentee is unlikely to go to great lengths to deceive the PTO with a falsehood unless it believes that the falsehood will affect issuance of the patent."   Id. at *12.   Here, Mr. O'Rourke's behavior stemmed directly from the statement by the patent officer that further foreign litigation material was not needed, and thus would not affect the issuance of the patent.   To attempt to characterize Mr. O'Rourke's lack of action as a "carefully executed scheme[] to defraud the PTO," id., would strain Therasense's distinction between affirmative acts and nondisclosures to the point of breaking.   After all, the court's clear intent in Therasense to heighten the bar of materiality for nondisclosures by requiring "but-for" materiality would be largely subverted if Teva's argument was found to have an objective basis.   See id.[13]

Thus, as previously indicated by this court, "Teva has failed to show any materiality of the nondisclosed reference material."

---

[13] Therasense's attempt to reign in the pursuit of inequitable conduct claims would be greatly frustrated by such a reading, as the much discussed heightened standard of "but-for" materiality would not apply to non-disclosures unexamined by the patentee.   Moreover, a distinction would emerge between different types of non-material non-disclosures, some of which would, by Teva's reading, still permit inequitable conduct claims.

Pfizer, Inc. v. Teva Pharms. USA, Inc., 2011 U.S. Dist. LEXIS 90021, at *133-*34.  This lack of evidence obviously falls far short of the necessary clear and convincing standard requisite for inequitable conduct, and calls into question the objective basis for Teva's claim.

**2.**

Turning now to the intent element of inequitable conduct, the court similarly found "that Teva has failed to bring any evidence to the court's attention which shows that Mr. O'Rourke acted with the specific intent to deceive the PTO."  Id. at *137.  Even assuming that Teva had made some showing of materiality, intent must be proven separately by clear and convincing evidence, and no sliding scale may be used to compensate one element's weakness with the other element's strength.   Therasense, 2011 W.L. 2028255, at *10. Indeed, even "[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive."  Id.

Once again, the court has already found that the Bayer Statement of Claim provides no basis to support an intent allegation.[14]  See

---

[14] Teva no longer argues that the Bayer Statement of Claim alone provides any objective basis for an inequitable conduct claim.  See supra notes 9 and 10.  The court, therefore, only briefly restates its examination of the Bayer Statement of Claim, laid out in full in its Opinion.  See Pfizer, Inc. v. Teva Pharms. USA, Inc., 2011 U.S. Dist. LEXIS 90021, at *135-*37.

Pfizer, Inc. v. Teva Pharms. USA, Inc., 2011 U.S. Dist. LEXIS 90021, at *135, *137.   The court found that due to the timing of its receipt, Mr. O'Rourke had no duty to disclose the claim in the first place. Additionally, an intent to deceive "is hardly the single most likely inference from his actions," which contradicts Therasense's instruction that such intent must be "the single most reasonable inference able to be drawn from the evidence."   Id. (emphasis added).

Teva again alleges instead that Mr. O'Rourke's "willful blindness" scheme, as argued at trial, provides the requisite support, this time for intent, to prevent its claim from being determined to be objectively baseless.   Def.'s Opp'n to Pls.' Mot. 16, Docket # 481.   In fact, Teva goes as far as to suggest that "[t]he single most reasonable inference to be drawn from the evidence is that Mr. O'Rourke devised and implemented his system with the intent to deceive the USPTO by ensuring that no such material reference would be provided to the USPTO."   Id.   Although Teva admits it provided no direct evidence of specific intent to deceive, it contends "[i]t was not illogical" for Teva to conclude from Mr. O'Rourke's failure to review documents that the "single most reasonable inference" was he acted "to deceive the USPTO."   Id.

The court, quite to the contrary, finds that Teva's position is precisely "illogical."   As the court previously stated: "The only inference the court can draw from the evidence presented at trial

17

was that Mr. O'Rourke was a busy young law partner who devised a somewhat "sloppy" system for sorting foreign litigation material." Pfizer, Inc. v. Teva Pharms. USA, Inc., 2011 U.S. Dist. LEXIS 90021, at *137 (emphasis added).   After all, "the patent examiner specifically requested not to receive any other foreign references similar to those already submitted," a statement that instigated the change to Mr. O'Rourke's review of documents.   Id. at *133. Further, much of the information that Mr. O'Rourke received, such as the Bayer Statement of Claim, came in after payment of Pfizer's issue fee, at a time when Mr. O'Rourke could not have submitted it to the PTO.   Id. at *136-*37.

"The court sees through this smokescreen and finds that Teva has failed to bring any evidence to the court's attention which shows that Mr. O'Rourke acted with the specific intent to deceive the PTO." Id. at *137.   The record is so far from "requir[ing] a finding of deceitful intent in the light of all the circumstances,"[15] that the court simply cannot find Teva's stated inference to be reasonable, or to provide any objective basis to allege that Mr. O'Rourke had an improper intent.

C.

Other courts, when faced with the pursuit of similar baseless claims, have found the cases to be "exceptional" within the meaning

---

[15] See Therasense, 2011 W.L. 2028255, at *10.

of 35 U.S.C. § 285.   In <u>Phonometrics, Inc. v. Choice Hotels Int'l,</u>
<u>Inc.</u>, 65 Fed. App'x 284, 285 (Fed. Cir. 2003), "[t]he district court
concluded that [the] case [was] exceptional because Phonometrics
continued to litigate the case even after it knew that it could not
prevail on the merits."   During litigation in that case, as here,
the Federal Circuit issued an opinion, concerning the construction
of certain patent claims, which was controlling for the underlying
issues in front of the trial court.   <u>Id.</u>   Despite the intervening
ruling, Phonometrics "took no affirmative steps to end th[e]
litigation;" therefore, the Federal Circuit affirmed the district
court's finding that Phonometrics' maintenance of its lawsuit was
"vexatious and deserving of exceptional case status."   <u>Id.</u> at
284-85.   Teva's actions here in continuing to pursue its inequitable
conduct claim after <u>Therasense</u>, and indeed attempting to expand its
allegations during trial, demonstrate the same sort of "exceptional"
baseless claim.

Correspondingly, in <u>AstraZeneca AB v. Dr. Reddy's Labs., Ltd.</u>,
No. 07cv6790, 2010 U.S. Dist. LEXIS 32883 (S.D.N.Y. March 30, 2010),
the district court awarded attorney fees after finding "there was
<u>no evidence whatsoever</u>" to support AstraZeneca's contention of
infringement.   <u>Id.</u> at *14 (emphasis in original).   "When a plaintiff
is notified of the defects of its case yet continues to assert its
claims in light of overwhelming evidence to the contrary, and

19

proceeds with arguments that a reasonable attorney would know are baseless, it litigates in bad faith." Id. Other cases have made consistent findings. See, e.g., Multi-Tech, Inc. v. Components, Inc., 708 F. Supp. 615, 620 (D.D.C. 1989) (finding a case exceptional after finding "this litigation was unjustified and that this was a frivolous lawsuit which intelligent people should have known would have no chance at success"). Given this court's finding that Teva presented no evidence of either the materiality or intent elements of a successful inequitable conduct claim, this case is properly termed "frivolous" and "exceptional."

### D.

In sum, the court **FINDS** that Pfizer has demonstrated, by clear and convincing evidence, that Teva's continued litigation of its claim for inequitable conduct after the Federal Circuit's decision in Therasense was frivolous, and thus "exceptional," under the meaning of 35 U.S.C. § 285. Teva's counterclaim was rendered objectively baseless by the Federal Circuit's opinion in Therasense, such that no reasonable litigant could have expected it to succeed. Moreover, given the clear directive in Therasense, and Teva's failure to present any evidence supporting its claim of inequitable conduct as discussed above, Teva's unabated pursuit of the claim was "exceptional."

## IV.  Appropriateness of Attorney Fees

"If the district court finds the case to be exceptional, it must then determine whether an award of attorney fees is appropriate." Forest Labs, Inc. v. Abbott Labs., 339 F.3d 1324, 1328 (Fed. Cir. 2003).  In making its determination, a court may weigh "intangible and tangible factors: the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice." Superior Fireplace Co. v. Majestic Prods. Co., 270 F.3d 1358, 1378 (Fed. Cir. 2001).  Here, several factors weigh in favor of an award under 35 U.S.C. § 285.

First, the Federal Circuit's opinion in Therasense provides substantial encouragement to an award of attorney fees.  As the Federal Circuit lamented, "low standards for intent and materiality have inadvertently led to many unintended consequences, among them, increased adjudication cost and complexity, reduced likelihood of settlement, burdened courts, strained PTO resources, increased PTO backlog, and impaired patent quality."[16]  Therasense, 2011 W.L. 2028255, at *9.  To achieve the court's stated purpose in Therasense of "redirect[ing] a doctrine that has been overused to the detriment of the public," id., courts must be willing to impose consequences

---

[16] See also Pfizer, Inc. v. Teva Pharms. USA, Inc., 2011 U.S. Dist. LEXIS 90021, at *124-*31.

for parties who continue to overreach in the aftermath of its issuance.

Furthermore, "this court finds that this case is the archetype of the action the Federal Circuit was aiming to curtail with the tightening of the standards in Therasense." Pfizer, Inc. v. Teva Pharms. USA, Inc., 2011 U.S. Dist. LEXIS 90021, at *139.   The record in this case, in addition to being devoid of evidence of inequitable conduct as discussed above, is also filled with examples of related wasted resources.   Teva not only persisted in its baseless inequitable conduct claim through trial, but it also attempted to amend the claim three days into trial, proposing new factual allegations and new individual defendants.   The court found that Teva "unnecessarily" delayed filing its motion, which was denied as prejudicial and futile.   Most incredibly, Teva attempted to include new allegations against one of Pfizer's trial counsel for the duration of this suit, Mr. DiNapoli, a concern expressed specifically by the Federal Circuit in Therasense.[17]   This conduct demonstrates that the interests of justice necessitate an award of attorney fees to Pfizer.

---

[17] "Most prominently, inequitable conduct has become a significant litigation strategy. A charge of inequitable conduct conveniently expands discovery into corporate practices before patent filing and disqualifies the prosecuting attorney from the patentee's litigation team." Therasense, 2011 W.L. 2028255, at *9.

The cases cited <u>supra</u> in Section III.C, awarding attorney fees for similar frivolous and baseless claims, further support such a finding.  See, e.g., Phonometrics, Inc. v. Choice Hotels Int'l, Inc., 65 Fed. App'x 284 (Fed. Cir. 2003).   Accordingly, the court **FINDS** that awarding Pfizer attorney fees for Teva's conduct in pursuing this "exceptional" case is appropriate under 35 U.S.C. § 285.

## V.   Amount of Attorney Fees

Pfizer requests an award of $378,285 in attorney fees related to defending Teva's motion for inequitable conduct.[18]   Teva does not contest either the hourly rate or the time entries submitted by Pfizer.  Def.'s Opp'n to Pls.' Mot. 27-30, Docket # 481.  Teva does argue, however, that if the court awards attorney fees, it should

---

[18] The Federal Circuit has suggested that a hybrid lodestar approach may be employed by a court to determine an appropriate award of attorney fees.  See Maxwell v. Angel-Etts of Cal., 53 Fed. App'x 561, 568 (Fed. Cir. 2002).

> Under this approach, the court first determines a lodestar figure by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate.  This lodestar figure may then be increased or decreased based on a variety of factors, such as skill and time required, novelty of the questions involved, fixed or contingent fee basis, results obtained, and/or relationship between attorney and client.

Id. (internal citations omitted).   Pfizer's calculated total is based on this approach.   The court determines that the amount requested is reasonable, a conclusion that is not opposed by Teva, with one exception, discussed infra in text at 23-25.

23

not award fees related to Pfizer's opposition of Teva's Motion for Sanctions and a Continuance of the June 15, 2011, Trial Date, nor for preparing for and defending the depositions of Robert MacFarlane, Esq., and Dr. Peter Richardson.  Id.  Teva argues that because the court granted-in-part its motion to continue, and granted Teva's request to take the two additional depositions, it cannot now award Pfizer attorney fees.  Id.

The court sees no reason to decrease Pfizer's fee award in relation to those proceedings.  Although Teva protests that Pfizer has not cited any authority for awarding fees for court sanctioned proceedings, Teva itself has not cited any authority that such proceedings must be excluded from an award under 35 U.S.C. § 285.[19] The court finds above that Teva's pursuit of its inequitable conduct claim was meritless after the Federal Circuit's issuance of Therasense.  Thus, prompt dismissal of its claim would have conserved the litigants', and the court's, time and resources, including those expended at the hearing on June 3, 2011, and at the resulting depositions, all of which occurred after the date of the Therasense opinion and after trial of this case had begun.  See

---

[19] Cf. Talon, Inc. v. Union Slide Fastener, Inc., 266 F.2d 731, 740 (9th Cir. 1959) ("A proper construction of Title 35, Section 285, does not require a district judge in awarding attorney's fees to a prevailing defendant to separately evaluate the services rendered under each separate defense contained in the defendant's answer and then to reduce or increase such award depending upon whether a particular defense failed or is sustained.").

Mueller Brass Co. v. Reading Indus., Inc., 352 F. Supp. 1357, 1381 (E.D. Pa. 1972), aff'd, 487 F.2d 1395 (3d Cir. 1973) ("The major purpose of [35 U.S.C. § 285] is to compensate a prevailing party for monies which he had to spend which he would not have had to spend but for the losing party's misconduct."). Teva has not provided suitable explanation for why the hearing and the depositions had any additional merit not reflected in its arguments at trial.[20] Therefore, the court **FINDS** that Pfizer's request for $378,285 in attorney fees is reasonable.

## VI.   Conclusion

For the reasons set out in this Memorandum Opinion, the court hereby **GRANTS** Pfizer's Motion for Attorney Fees Pursuant to 35 U.S.C. § 285, and **AWARDS** attorney fees in the amount of $378,285.   The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion to all counsel in this case.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
United States District Judge

Rebecca Beach Smith
United States District Judge

Norfolk, Virginia
October 17, 2011

---

[20] See also supra note 7.  Teva, as previously discussed, used this deposition testimony at trial to attempt to amend its inequitable conduct claim, an attempt this court found to create unnecessary delay, as well as being both unnecessarily prejudicial and completely futile on the merits.  See supra note 4 and accompanying text.